UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA MCWILLIAMS,

     Plaintiff,

v.                                Case No: 8:22-cv-1047-VMC-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sandra McWilliams seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI). As the Administrative Law Judge's (ALJ) decision was not based on substantial evidence and proper legal standards, the undersigned recommends that the decision be reversed and remanded.

## BACKGROUND

**A.    Procedural Background**

Plaintiff filed applications for a period of disability, DIB, and SSI on September 9, 2019. (Tr. 237–45.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 60–121.) Plaintiff then requested an administrative hearing. (Tr. 168–73.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 36–56.) Following the hearing, the ALJ issued

an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 16–35.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–15.)  Plaintiff then timely filed a complaint with this court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1963, claimed disability beginning on April 17, 2017. (Tr. 60–61, 71–72.)  Plaintiff completed high school and attended two years of college and has past relevant work as a hospital admitting clerk.  (Tr. 30, 262, 275–78.) Plaintiff alleged disability due to depression, anxiety, bipolar depression, neck injuries, and chronic pain.  (Tr. 61, 72.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 17, 2017, the alleged onset date.  (Tr. 21.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar pain with myofascitis; pain in the left elbow, wrist, and shoulder; left knee pain; cervicalgia; spondylosis of the cervical spine; cervicothoracic radiculopathy; right shoulder impingement and rotator cuff strain; hypertension; and obesity.    (Tr. 22.)    Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24.)  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light

work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff "cannot climb ladders, ropes or scaffolds[;] can occasionally climb ramps and stairs[;] can occasionally balance, stoop, kneel, crouch, and crawl[; and] can frequently reach overhead with both upper extremities." (Tr. 24.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 25.)

Considering Plaintiff's noted impairments, the ALJ determined that Plaintiff could perform her past relevant work as a hospital admitting clerk as actually performed and as generally performed in the national economy.   (Tr. 30.) Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled.  (Tr. 31.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or

psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.   20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as

- 4 -

a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in finding that Plaintiff could perform her past relevant work as generally and as actually performed; (2) the ALJ failed to find Plaintiff disabled under the applicable Medical Vocational Guidelines (grids); (3) the ALJ failed to adequately consider

Plaintiff's mental impairments or include any limitations in Plaintiff's mental functioning in her RFC; (4) the ALJ erred in rejecting the opinions of Plaintiff's therapist and consultative examining psychologist; and (5) the ALJ failed to find Plaintiff's obstructive sleep apnea a severe impairment or include relevant limitations in Plaintiff's RFC. (Dkt. 19.) Because the undersigned finds that the ALJ failed to satisfy its duty to develop a full and fair record, the undersigned recommends that Plaintiff's third and fourth contentions warrant reversal.

### A. Consideration of Plaintiff's mental impairments and the opinions of Plaintiff's therapist

Advanced Registered Nurse Practitioner (ARNP) Carol Sanden was Plaintiff's treating therapist beginning in or around July 2017. (Tr. 448–50, 465–68.) As reflected in the record, ARNP Sanden authored two opinions regarding Plaintiff's mental conditions, a November 2019 narrative (Tr. 448) and a March 2021 narrative and mental disorders form (Tr. 465–66, 469–74). ARNP Sanden's opinions note that Plaintiff had been seen "more or less on a weekly basis" from 2017 through the beginning of 2019 (Tr. 448), and that ARNP Sanden's treatment records consisted of "notes generated in 3+ yrs. of twice monthly sessions." (Tr. 465.) Based on her treatment of Plaintiff, ARNP Sanden opined as to Plaintiff's mental impairments and concluded that Plaintiff had marked limitations in her mental functioning as a result of both her depressive, bipolar disorder and her anxiety and obsessive-compulsive disorder. (Tr. 469–74.) However, in both of her opinions, ARNP Sanden noted that due to the volume of the records from her treatment of Plaintiff on a regular basis over

several years, she was providing only the opinions themselves and Plaintiff's July 2017 initial evaluation and not Plaintiff's entire treatment record.  (Tr. 448, 465.)

In her pre-hearing memorandum, Plaintiff identified treatment records from ARNP Sanden from after November 8, 2019 as remaining outstanding.  (Tr. 307–08.) During the hearing, the ALJ discussed with Plaintiff's counsel that certain medical records were not yet in the record, however ARNP Sanden's treatment records were not discussed nor was the record supplemented to include them after the hearing.  *See* (Tr. 40–42.)

The ALJ considered both of ARNP Sanden's opinions as part of the decision finding Plaintiff not disabled.  (Tr. 22–23, 29.)  In the decision, the ALJ considered the severity of Plaintiff's mental impairments at step two of the sequential evaluation process and noted that "the record confirms that [Plaintiff] has been receiving some therapy since July 2017 and has been receiving treatment from her current therapist since 2019."  (Tr. 22.)  The ALJ continued that "[n]onetheless, the record contains only some therapy notes from July 2017 that confirm benign mental status examination findings[.]"  (Tr. 22.)  In analyzing the effect of Plaintiff's mental conditions on her ability to work at step four in the sequential evaluation process, the ALJ considered ARNP Sanden's two opinions, but found that her November 2019 opinion was unsupported by ARNP Sanden's own treatment notes "which confirm benign mental status examination findings," and her March 2021 opinion was "entirely unsupported by any objective findings from [ARNP] Sanden since the record does not contain any treatment notes from her."  (Tr. 29.)  The ALJ concluded that he

- 7 -

was not persuaded by either of ARNP Sanden's opinions because they were not supported by her own treatment records, nor were they consistent with the other evidence in the record.  (Tr. 29.)

Plaintiff argues that the ALJ failed to satisfy its obligation to develop a full and fair record by failing to request additional treatment records from ARNP Sanden and then relying on the absence of those records to discount ARNP Sanden's opinions. (Dkt. 19 at 24–27.)  Plaintiff also argues that the ALJ failed to adequately consider ARNP Sanden's medical opinions and the opinion of Plaintiff's consultative examining psychologist, Dr. Sara Malowitz.  (*Id.* at 24–27.)  The Commissioner responds that Plaintiff has failed to show any prejudice in the ALJ's failure to request additional records from ARNP Sanden and that the ALJ properly evaluated the medical opinions under the relevant regulations.  (Dkt. 24 at 16–24.)  Plaintiff further argues that the ALJ erred in failing to find that Plaintiff's mental impairments were severe, and failing to include any relevant restrictions in Plaintiff's RFC or provide an adequate explanation for not doing so.  (Dkt. 19 at 19–23.)  The Commissioner responds that Plaintiff has not met her burden to establish that her mental impairments are severe and that substantial evidence supports the ALJ's consideration of Plaintiff's mental impairments.  (Dkt. 24 at 10–16.)  Upon consideration, the undersigned recommends that reversal is necessary because the ALJ failed to satisfy its duty to develop a full and fair record by failing to request additional treatment records from ARNP Sanden and that the ALJ's consideration of ARNP's Sanden's opinions and

Plaintiff's mental conditions based on the lack of those records was therefore not supported by substantial evidence.

Plaintiff "bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the "ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 20 C.F.R. §§ 404.1512(b), 416.912(b) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports."). A claimant's "complete medical history means the records of [the claimant's] medical source(s) covering at least the 12 months preceding the month in which" the application is filed. 20 C.F.R. §§ 404.1512(b)(ii), 416.912(b)(ii). The ALJ maintains this obligation to develop a full and fair record regardless of whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)

As part of its duty to develop the record, the regulations provide the ALJ with discretion to recontact a medical source or seek additional existing evidence if the ALJ is unable to reach a decision because the case record is "insufficient or inconsistent." 20 C.F.R. §§ 404.1520b, 416.920b. In determining whether an ALJ's failure to recontact a medical source warrants remand, the court is guided by "whether the

record reveals evidentiary gaps which result in unfairness or clear prejudice" to the claimant. *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 879 (11th Cir. 2014) ("Without any demonstration that the record was inadequate or led to unfairness or clear prejudice, we cannot say that the ALJ committed reversible error by choosing not to contact [the treating physician] for additional information."). "In other words, 'there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record.'" *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (quoting *Brown*, 44 F.3d at 935). To establish prejudice, the claimant must show that "the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.* (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)); *see also Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin.*, 669 F. App'x 964, 967 (11th Cir. 2016) ("Such gaps exist when omitted medical records are relevant to the applicant's claim of disability and the missing evidence might sustain the contention of an inability to work.") (citing *Brown*, 44 F.3d at 935–36).

Further, under the relevant regulations, the ALJ must consider the persuasiveness of all medical opinions, and address, most importantly, each opinion's supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022) (affirming that new regulations apply to applications filed on or after March 27, 2017). "Supportability" refers to the

principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) [], the more persuasive the medical opinions [] will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) [] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) [] will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  In considering medical opinion evidence, the ALJ must therefore analyze whether a medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at * 3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted,* 2021 WL 1565162 (Apr. 21, 2021).

As noted above, ARNP Sanden treated Plaintiff in therapy either on a weekly or biweekly basis over the course of several years beginning in 2017 and continuing through at least 2021.  *See* (Tr. 448, 465.)  However, in support of her two opinions, ARNP Sanden produced and the record contains only her July 2017 initial treatment notes.  (Tr. 448, 465.)  The ALJ clearly noted this evidentiary gap in the record in the discussing both the severity of Plaintiff's mental impairments at step two and in determining the effect of Plaintiff's mental impairments on her ability to work at step four.  *See* (Tr. 22–23, 28–29.)  Indeed, the ALJ specifically relied on this evidentiary gap to discount ARNP Sanden's opinions because they were not supported by her limited treatment notes in the record.  (Tr. 29); *see Perez v. Colvin*, No. 8:12-cv-2039-T-AEP, 2013 WL 12161447, at *7 (M.D. Fla. Sept. 30, 2013) ("Here, the ALJ clearly

noted an evidentiary gap in the record, and, as a result of that gap, discounted the opinion of Plaintiff's treating psychiatrist[.]"); *Melody B. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00044-RGV, 2020 WL 13580461, at *14 (N.D. Ga. Sept. 29, 2020) ("The 'evidentiary gaps prevented the ALJ from making a full, fair, and impartial assessment of [claimant's] RFC and what jobs [s]he may reasonably pursue.'") (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1270 (11th Cir. 2015) (concluding that "the ALJ's RFC assessment [was] not supported by substantial evidence" as the "ALJ did not fulfill the duty to investigate all the facts related to [claimant's] vision limitations and consider the evidence as a whole in forming the RFC assessment" given that the "underdeveloped record present[ed] evidentiary gaps that ma[de] assessment of [claimant's] physical limitations unfair and clearly prejudicial")).  Moreover, the ALJ found the opinions of two state agency psychological consultants regarding Plaintiff's mental impairments to be persuasive because the opinions were consistent with the evidence of record which reflected "unremarkable psychiatric examination findings in the treatment records" and that both consultants "arrived at the same determination after independently reviewing the record."  (Tr. 28–29.)  However, the consultants' opinions were formed based on the same evidentiary gap and only demonstrate consideration of records received from ARNP Sanden in November 2019, rather than her full treatment record of Plaintiff.  *See* (Tr. 62, 73, 92, 104.)

Based on the evidentiary gap presented by the lack of ARNP Sanden's treatment notes in the record, the ALJ's consideration of the supportability of ARNP Sanden's opinions, i.e. whether ARNP Sanden's opinions were supported by her own treatment

notes, was not supported by substantial evidence.  Additionally, the ALJ's reliance on the lack of ARNP Sanden's treatment notes to find that Plaintiff's mental conditions were not severe at step two and did not cause work-related limitations at step four renders those findings unsupported by substantial evidence as well.

Although the Commissioner argues that Plaintiff has not shown prejudice in the ALJ's failure to request additional records from ARNP Sanden, the Commissioner herself argues that the lack of records from Plaintiff's mental health treatment supports the ALJ's findings that her mental conditions were not severe and did not impair her ability to work. *See* (Dkt. 24 at 13 ("As noted by the ALJ, the record contains no significant or persistent objective mental deficits or abnormalities, despite diagnoses of major depressive disorder and generalized anxiety.") (citing Tr. 22).)   The Commissioner further supports her argument by relying on the ALJ's finding that "the record contains only some therapy notes from July 2017 that confirm benign mental status examination findings[.]"  (*Id.* at 13–14.)

The Eleventh Circuit has found that an ALJ's failure to further develop the record does not prejudice a claimant where the claimant fails to put forth claims sufficient to invoke the ALJ's duty to investigate, where there is no other evidence in the record to support the claimant's alleged symptoms, or where the ALJ is already in possession of the relevant medical records so as to make an informed decision.  *See, e.g., Mosley*, 633 F. App'x at 742 ("The record shows that the ALJ thoroughly inquired into the facts and circumstances related to the claims Mosley presented to him. Though represented by counsel throughout the proceedings, Mosley did not list any

mental impairment or intellectual functioning issues in her applications for [benefits].”); *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010) (“[G]iven the record, the ALJ was not under a duty to elicit further information about Walker's medication side effects [where] [a]part from her own subjective statements, there is no evidence in the record that any of Walker's other symptoms actually were caused by her medications.”); *Couch v. Astrue*, 267 F. App'x 853, 855–56 (11th Cir. 2008) (“Additionally, it appears that the ALJ was in possession of all of Dr. Figueroa's medical records, and the information contained therein was adequate to enable the ALJ to determine that Couch was not disabled.  Therefore, there was no need for additional information or clarification.”).  These circumstances are not present here.  Plaintiff alleged disability based on her mental impairments (Tr. 61, 72); Plaintiff testified as to the effect of her mental impairments on her ability to work (Tr. 45–46) and presented the opinions of ARNP Sanden and Dr. Malowitz (Tr. 448–50, 462–64, 465–74); and the ALJ's evaluation of Plaintiff's mental impairments relied on the absence of records from ARNP Sanden, who evaluated and treated Plaintiff's mental impairments on a regular basis over the course of several years (Tr. 22–23, 28–30).

Thus, the undersigned finds that the ALJ failed to adequately develop a full and complete record by failing to recontact ARNP Sanden to acquire her full treatment records of Plaintiff.  This failure resulted in an evidentiary gap in the record that prejudiced Plaintiff through the ALJ's reliance on a lack of treatment records in considering ARNP Sanden's opinions and in finding Plaintiff's mental impairments to be non-severe at step two and in determining the effect of her mental impairments on

Plaintiff's ability to work at step four.   *See, e.g.*, *Cooper v. Acting Comm'r of Soc. Sec. Admin.*, No. 3:15-cv-864-J-MCR, 2017 WL 1135088, at *4 (M.D. Fla. Mar. 27, 2017) ("The ALJ's failure to sufficiently probe the facts regarding the missing mental health records is prejudicial in light of the evidentiary gaps presented in the record [where] [m]edical records from . . . mental health providers indicating treatment for anxiety may shed light on the severity of Plaintiff's mental impairments in a way that the records before the ALJ cannot.") (citing *Rothfeldt*, 669 F. App'x at 967; *Parker v. Colvin*, No. 3:13-cv-1398(CSH), 2015 WL 928299, at *13 (D. Conn. Mar. 4, 2015) ("The ALJ had a duty to review the records of plaintiff's providers for her mental health impairment, namely, the records from the Morris Foundation, before reaching a conclusion regarding plaintiff's mental impairments, particularly when the ALJ reached his conclusion as to plaintiff's 'mild' limitations in light of a lack of treatment records.")); *Pena v. Comm'r of Soc. Sec. Admin.*, No. 6:19-cv-1804-Orl-MCR, 2021 WL 777886, at *15 (M.D. Fla. Mar. 1, 2021) ("Moreover, to the extent treatment records from CHM and Dr. Grissom appear to be incomplete [] or altogether missing[], the Court also finds this warrants remanding the case."); *Milne v. Colvin*, No. CV 15-00656-N, 2016 WL 6516821, at *8 (S.D. Ala. Nov. 2, 2016) ("The ALJ's failure to seek clarification from Dr. McCreadie on her notes clearly prejudiced Milne.   Dr. McCreadie was the only treating source to provide a medical opinion regarding Milne's mental impairments, and her treatment notes spanned most of the period between Milne's alleged disability onset and the date of Milne's administrative hearing."); *Rivers v. Kijakazi*, No. 21 CIV. 820 (JCM), 2022 WL 2901578, at *15

(S.D.N.Y. July 22, 2022) (reversing for failure to develop the record where, in part, "the ALJ failed to obtain all of the records of Plaintiff's emergency treatments for diabetes, which could have shed further light on her functional capacity with respect to that condition").   The ALJ's consideration of ARNP Sanden's opinions and Plaintiff's mental impairments, both at steps two and four of the sequential evaluation process was therefore not supported by substantial evidence.[1]   Accordingly, the undersigned recommends that reversal and remand is required for the ALJ to recontact Plaintiff's therapist, ARNP Sanden, in order to acquire Plaintiff's full treatment record, and for the ALJ to reassess the severity of Plaintiff's mental impairments and their effect on her ability to work based on Plaintiff's "complete medical history."   *See* 20 C.F.R. §§ 404.1512(b)(ii), 416.912(b)(ii).

## B. Plaintiff's remaining contentions

Should the court accept the above findings, it need not address Plaintiff's remaining challenges to the ALJ's decision because the remainder of the ALJ's decision may be affected by reconsideration of the evidence on remand.   *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (where remand is required, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th

---

[1] Because the undersigned recommends that the ALJ's decision be reversed and remanded on this basis, and because the ALJ's further consideration of the evidence on remand will likely have an impact on the ALJ's analysis, the undersigned does not address Plaintiff's remaining arguments with respect to her mental impairments and the relevant medical opinions, including whether the ALJ failed to consider ARNP Sanden's November 2019 "extensive update" and whether the ALJ failed to adequately consider the consistency of ARNP Sanden's and Dr. Malowitz's opinions. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the action).

Cir. 1983) (on remand, the ALJ should review the case on a complete record, including any new material evidence).   Nevertheless, in case the court does not agree that the above issues warrant remand, the undersigned considers Plaintiff's remaining arguments below and finds that none of them, standing alone, warrant reversal of the ALJ's decision.

### a. Plaintiff's past relevant work

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work because (1) her past relevant work was a "composite job" and therefore did not have an "as generally performed" component and (2) Plaintiff's job as actually performed exceeded light work and she could therefore not return to her work in light of her RFC.  (Dkt. 19 at 13–17.)   The Commissioner responds that Plaintiff has not shown that her previous job was a "composite job," and that substantial evidence supports the ALJ's finding that Plaintiff could return to her past relevant work.  (Dkt. 24 at 5–6.)  The undersigned agrees with the Commissioner on this issue.[2]

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to undertake past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   A claimant can perform her past relevant work if her RFC is sufficient to meet the demands of the relevant job.  *See* 20 C.F.R. §§ 404.1560(b), 416.960(b).  "At step four, the claimant carries a heavy burden of showing that his

---

[2] To the extent that remand results in the ALJ's reconsideration of Plaintiff's RFC, the undersigned expresses no opinion as to whether Plaintiff could return to her past relevant work under the reconsidered RFC.

impairment prevents him from performing his past relevant work." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citing *Bloodsworth*, 703 F.2d at 1240 ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work.")); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).

In considering whether a claimant can return to past relevant work, the ALJ must (1) consider all the duties of the past relevant work and (2) evaluate the claimant's ability to perform the duties in light of her impairments. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). In support of her claim, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." Social Security Ruling (SSR) 82-62, 1982 WL 31386 (Jan. 1, 1982) Testimony from a VE "is not required in determining whether a claimant can perform her past relevant work[.]" *Hennes v. Comm'r of Soc. Sec. Admin*, 130 F. App'x 343, 346 (11th Cir. 2005) (citing *Lucas*, 918 F.3d at 1573 n.2); *Belser v. Soc. Sec. Admin., Comm'r*, No. 20-12121, 2021 WL 6116639, at *8 (11th Cir. Dec. 27, 2021) ("[Plaintiff], who was represented by counsel, made no objections during the hearing regarding the lack of VE testimony. Further, VE testimony was not required during the hearing because the ALJ found that [plaintiff] could return to her past work as a real estate agent, at step four of the analysis.").

The claimant has the burden to show that she can no longer "perform h[er] past kind of work, not that [s]he merely [is] unable to perform a specific job [s]he held in

the past." *Jackson*, 801 F.2d at 1293 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).

When a claimant's prior job involved functional demands and duties significantly in excess of those generally required for that type of work by employers in the national economy, the claimant must show that she cannot perform the functional demands and job duties of the position generally required by employers nationwide. *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (citing *Jackson*, 801 F.2d at 1293–94); SSR 82-61, 1982 WL 31387.

Under the regulations, a "composite job" is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the [Dictionary of Occupational Titles (DOT)]." SSR 82-61, 1982 WL 31387 at *2; Program Operations Manual System (POMS) DI 25005.020 (Past relevant work may qualify as a composite job "if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.").[3]  "[W]hen the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform [her] previous work as actually performed." *Smith*, 743 F. App'x at 954.

Upon consideration, substantial evidence supports the ALJ's consideration of Plaintiff's past relevant work and Plaintiff has not met her burden to establish that she cannot return to her past relevant work.  Initially, the ALJ properly found that

---

[3] The Social Security Administration's POMS is the publicly available operating instructions for processing Social Security claims.  "While the POMS does not have the force of law, it can be persuasive." *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).

Plaintiff's past relevant work was not a composite job, but rather was properly characterized as a hospital admitting clerk, DOT 205.362-018.  In her work history report, Plaintiff described her past relevant work as a hospital patient registration representative.  (Tr. 275–78).)  She described the activities of her job as including greeting patients; verifying, updating, and adding patient information; collecting and recording payments; operating the phone, fax machine, copier, and printer; and pushing "any patient to [the] appropriate area in [a] wheelchair."  (Tr. 276.)  Plaintiff further described the physical demands of her work as including that she "pushed patients in wheelchairs, full grown adults of various sizes [and] weights daily 50 ft;" that she carried "2 or 3 reams of paper to various copiers, printers in different areas;" and that she "walked to patient rooms to update demographics and insurance info, scanned [insurance] cards [and] ID [and had] patient[s] sign appropriate paperwork and scan into system."  (Tr. 276, 278.)  Plaintiff stated that the heaviest weight she lifted was 20 pounds, and noted that she frequently lifted 10 pounds.  (Tr. 276.)  She also described that as part of her job she walked for two hours of the day, stood for two hours of the day, and sat for four hours of the day.  (Tr. 276.)  Plaintiff also reported that she knelt, crouched, and reached for one hour per day; handled, grabbed, or grasped large objects for one hour per day; and wrote, typed, or handled small objects for four hours per day.  (Tr. 276.)

In concluding that Plaintiff could return to her past relevant work, the ALJ considered Plaintiff's work history report and characterized her prior work as a hospital admitting clerk, DOT 205.362-018, which the DOT classifies as sedentary,

semi-skilled work.  (Tr. 30.)   However, the ALJ found that based on Plaintiff's reporting, she actually performed her work at the light exertional level.  (Tr. 30.)  The ALJ concluded that Plaintiff's "past relevant work does not exceed [her RFC] as she actually performed that job, and as that job is customarily performed in the national economy."  (Tr. 31.)  The ALJ also specifically found that according to Plaintiff and the DOT, Plaintiff's past relevant work did not include any climbing ladders, ropes, or scaffolds and that her past relevant work complied with her RFC's restrictions on reaching.  (Tr. 30–31.)  The ALJ therefore found that "[i]n comparing [Plaintiff's] [RFC] with the physical and mental demands of this work . . . [Plaintiff] is able to perform it as actually and generally performed."  (Tr. 30.)

Plaintiff relies on her statements that she pushed patients in wheelchairs to argue that her past relevant work was a "composite job" between a hospital admitting clerk, DOT 205.362-018, and a patient transporter, DOT 355.677-014.  (Dkt. 19 at 14–16; Dkts. 19-1, 19-2.)  However, as the Commissioner points out, the DOT description for the hospital admitting clerk includes duties such as "[e]scort[ing] patient or arrang[ing] for escort to assigned room or ward."  DOT § 205.362-018, 1991 WL 671710; *see Martinez v. Kijakazi*, No. 8:20-cv-1025-TPB-AEP, 2021 WL 4482616, at *13 (M.D. Fla. Aug. 23, 2021) (rejecting argument that prior job was composite job where "[n]otwithstanding Plaintiff's assertion to the contrary, these [additional] job duties fall within the [DOT] description" of the position used by the ALJ), *report and*

- 21 -

*recommendation adopted,* 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021). [4]   Plaintiff provides no other evidence regarding to what extent pushing patients in wheelchairs was a "significant" element of her past work.  *See Smith*, 743 F. App'x at 954 (rejecting claimant's argument that his job was a composite job where he failed to present evidence that his job had significant elements of two or more occupations); *Fleurima v. Saul*, No. 8:19-cv-2835-T-AAS, 2020 WL 6074388, at *4 (M.D. Fla. Oct. 15, 2020) (Plaintiff "did not introduce any evidence about (1) any additional duties that fell outside the usual responsibilities of an administrative assistant, or (2) how these unknown duties were a 'significant element' of another occupation.").  Indeed, when asked at the hearing, Plaintiff agreed that at her prior job she was "sitting most of the time," usually working on a computer.  (Tr. 50.)

Instead, Plaintiff relies on 2018 data from the Occupational Requirements Survey (ORS) published by the Bureau of Labor and Statistics (Dkts. 19-3, 19-4) stating that for 100% of workers in the Standard Occupational Classification group 43-4111, which Plaintiff states includes a hospital admitting clerk, pushing or pulling with hands and arms was not required.  (Dkt. 19 at 14–15.)  However, Plaintiff did not present the ORS data to either the ALJ or the Appeals Council, and it is therefore not part of the administrative record before the court.  *See Koehler v. Kijakazi*, No. 2:22-cv-210-JES-

---

[4] The DOT description for hospital admitting clerk that Plaintiff provided to the Appeals Council similarly states that the position includes escorting patients to their rooms as Plaintiff reports having done in her past relevant work.  *See* (Tr. 314 (listing nature of work in healthcare setting as including "assigning patients to rooms and summoning escorts to take patients to their rooms sometimes, interviewers may escort patients themselves").)

KCD, 2023 WL 1098234, at *6 (M.D. Fla. Jan. 30, 2023) ("The ORS data cannot serve as a basis for error because plaintiff did not confront the VE with this ORS data during the hearing, or otherwise present it to the ALJ, or present it to the Appeals Council."); *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 556 (11th Cir. 2019) ("Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics."). Indeed, in both cases relied upon by Plaintiff to argue that remand is necessary to consider the ORS data, the ORS data had been properly raised either to the ALJ in a post-hearing memorandum or to the Appeals Council. *See Roth v. Comm'r of Soc. Sec.*, No. 6:20-cv-550-MRM, 2021 WL 4399125, at *8 (M.D. Fla. Sept. 27, 2021) (finding ALJ's failure to consider timely submitted post-hearing memorandum that included ORS data resulted in clear prejudice to plaintiff); *Hernandez v. Saul*, No. CV 19-1299-AS, 2020 WL 1156402, at *5 (C.D. Cal. Mar. 10, 2020) (finding that plaintiff properly raised ORS data to the Appeals Council but noting that "ALJ was not obligated to address non-DOT sources at the hearing" and plaintiff's "counsel's own convoluted lay analysis of the statistical data from these sources is inadequate to demonstrate that the VE's job numbers were incorrect"). In contrast, Plaintiff here did not submit the ORS data on which she now relies to either the ALJ or the Appeals Council, but rather relied only on counsel's interpretation of the DOT descriptions for hospital admitting clerk and patient transporter in arguing that review was warranted to the Appeals Council. *See* (Tr. 306–23.) Thus, the

undersigned cannot conclude that remand is necessary for the ALJ to consider the ORS data.

Substantial evidence also supports the ALJ's finding that Plaintiff actually performed her past relevant work at the light exertional level. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). Plaintiff similarly relies on evidence that was not properly part of the administrative record to argue that in pushing patients in wheelchairs, Plaintiff exerted force in excess of 20 pounds. *See* (Dkt. 19 at 16 n.2 (relying on website to note that "[i]t has been estimated that normal pushing force of 25 pounds is required to push a wheelchair on a level floor for a 160-pound patient").) However, Plaintiff, herself, reported that the heaviest weight lifted at her past work was 20 pounds and that she frequently lifted 10 pounds (Tr. 276) and provided no indication that she was required to exert more force. Indeed, the DOT description for hospital admitting clerk states that the position requires "[e]xerting up to 10 pounds of force occasionally [] and/or a negligible amount of force frequently [] to lift, carry, push, pull, or otherwise move objects, *including the human body*." DOT 205.362-018, 1991 WL 671710 (emphasis added); SSR 82-62, 1982 WL 31386 ("statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work"). As required by the regulations, the ALJ made explicit findings regarding the duties of her past relevant work by relying on Plaintiff's work history report and evaluated Plaintiff's ability to perform those duties in light of her RFC. *See Lucas*, 918

F.2d at 1574 n.3.  Thus, the undersigned finds that should the court reject the above findings requiring reversal for failure to develop the record, Plaintiff has not established that her past relevant work as a hospital admitting clerk exceeded light work, and substantial evidence supports the ALJ's decision that Plaintiff can return to her past relevant work.  *See Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 283 (11th Cir. 2011) (holding that substantial evidence supported ALJ's determination that plaintiff could return to her past relevant work where RFC permitting light work did not exceed plaintiff's past work as reported in her work history report, even where plaintiff reported frequently lifting 25 pounds).

### b.  The Medical Vocational Guidelines

Plaintiff argues that because she could not perform her past relevant work as a hospital admitting clerk and no transferable skills were identified, the ALJ erred in not finding Plaintiff disabled pursuant to Medical Vocational Guidelines (grids) rules 202.06 and 201.14.  (Dkt. 19 at 17–19.)  The Commissioner responds that Plaintiff failed to carry her burden that she was unable to perform her past relevant work at step four of the sequential evaluation process, and therefore the ALJ did not err in failing to apply the grids at step five.  (Dkt. 24 at 9–10.)  Upon consideration, the undersigned agrees with the Commissioner.  As discussed above, the ALJ's finding that Plaintiff can return to her past relevant work at step four was supported by substantial evidence and Plaintiff has otherwise failed to show error in that conclusion.  Although Plaintiff argues that she is disabled pursuant to the Medical Vocational Guidelines used in step five of the sequential evaluation process, "those guidelines apply *only if* the

administrative law judge determines that a claimant is incapable of performing [her] past relevant work at step four of the evaluation." *Delmonte v. Comm'r, Soc. Sec. Admin.*, 585 F. App'x 774, 776 (11th Cir. 2014) (emphasis added) (citing 20 C.F.R. § 404.1520(a)(4)(iv), (v)).   Thus, because the ALJ properly determined that Plaintiff could return to her past relevant work at step four of the sequential evaluation process, the ALJ did not err in failing to find Plaintiff disabled pursuant to the Medical Vocational Guidelines at step five. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding claimant's argument that the ALJ should have applied the grids fails because the grids are only applied if the claimant is unable to perform his or her vocationally relevant past work).

### c.  Plaintiff's obstructive sleep apnea

Plaintiff argues that the ALJ erred by failing to find that her obstructive sleep apnea was a severe impairment at step two or to include limitations related to her sleep apnea in Plaintiff's RFC at step four.  (Dkt. 19 at 27–29.)  To support her argument, Plaintiff contends that the ALJ's consideration of her sleep apnea relied on the ALJ's incorrect statement that there was no record evidence of obstructive sleep apnea as a medically determinable impairment during the timeframe at issue.  (*Id.*)   The Commissioner responds that substantial evidence supports the ALJ's consideration of Plaintiff's obstructive sleep apnea and that Plaintiff has otherwise not shown any prejudice in the ALJ's consideration of that condition.  (Dkt. 24 at 24–26.)  The undersigned agrees with the Commissioner.

Before formulating an RFC, the ALJ must consider the medical severity of a claimant's impairments.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   An impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a).   To establish a severe impairment, the claimant is only required to show that the "impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019).   However, if an ALJ errs in finding that a claimant's impairments are not severe at step two, such error is harmless when the ALJ finds that the claimant has at least one severe impairment.   *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment, and that finding is all that step two requires."); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [the plaintiff] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.").   Therefore, to the extent Plaintiff seeks remand due to the ALJ's failure to find that her obstructive sleep apnea was a severe impairment, any such error is harmless because the ALJ found that Plaintiff had other severe impairments and proceeded to step three of the sequential analysis.  (Tr. 22–24.)

The undersigned similarly does not find reversible error in the ALJ's consideration of Plaintiff's obstructive sleep apnea in formulating her RFC at step four. In discussing the medical evidence, the ALJ noted that Plaintiff underwent a consultative evaluation by Dr. Pascal Bordy, in which Dr. Bordy assessed her with obstructive sleep apnea, among other impairments.  (Tr. 26 (citing Tr. 452–60).) However, Dr. Bordy did not provide "an opinion of [Plaintiff's] functional abilities that would require an evaluation of persuasiveness[.]"  (Tr. 26.)  With respect to functional limitations resulting from her obstructive sleep apnea, Plaintiff relies on the opinion of Dr. Minal Krishnamurthy, who found that Plaintiff should avoid concentrated exposure to vibration and hazards due to her cervical degenerative disc disease, obstructive sleep apnea, and obesity. (Tr. 27 (citing Tr. 98, 110).)  The ALJ found that he was not persuaded by these environmental limitations because they were "partially based on an obstructive sleep apnea impairment, yet there is no evidence of obstructive sleep apnea as a medically determinable impairment during the timeframe at issue." (Tr. 28.)  The ALJ further found that "no treating source has stated any such environmental limitations are warranted, nor has [Plaintiff] alleged that these conditions exacerbate her medical impairments."  (Tr. 28.)  The ALJ therefore declined to include any environmental limitations in Plaintiff's RFC. (Tr. 28.)

Plaintiff is correct that the ALJ misstated the record regarding her obstructive sleep apnea, and that the record reflects that her obstructive sleep apnea was assessed on at least five different occasions after the alleged onset date.  *See* (Tr. 399, 407, 413, 420, 457.)  However, Plaintiff does not assert any other error with respect to the ALJ's

assessment of Dr. Krishnamurthy's opinion, and the undersigned finds that the ALJ's consideration of the environmental limitations assessed by Dr. Krishnamurthy was otherwise supported by substantial evidence. *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (affirming ALJ's decision that was supported by substantial evidence because "even if the ALJ made a factual error or applied an improper legal standard, we may conclude that such errors are harmless in the context of a particular case") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding harmless ALJ's errors in stating that the claimant was closely approaching advanced age and in considering the claimant's prior job as an assembler, contrary to the regulations); *Washington v. Astrue*, No. 8:08-cv-1614-T-27-GJK, 2009 WL 2949034, at *14 (M.D. Fla. Sept. 14, 2009) ("[A] single erroneous statement by an ALJ standing alone does not require remand.") (citation omitted).  Further, Plaintiff has not cited any additional evidence in the record that her obstructive sleep apnea causes environmental or other limitations on her ability to work and the mere existence of that impairment does not prove the extent to which it may limit her ability to work. *See Hutchison v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *Moore*, 405 F.3d at 1213 n.6 ("Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation.  However, the mere existence of these

impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (emphasis in original).  Thus, the undersigned finds that Plaintiff has failed to establish reversible error in the ALJ's assessment of her obstructive sleep apnea.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above; and

2. The Clerk of Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on May 4, 2023.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has 14 days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to

factual finding or legal conclusion the district judge adopts from the Report and

Recommendation.  *See* 11th Cir. R. 3-1.


Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record